The next case of the afternoon, People of the State of Illinois v. Johnny Gillon, 414-0801 for the appellant, Mr. Jarka, for the appellate, Mr. Zimmerman. You may proceed. Brad Jarka Good afternoon, Your Honors. May it please the Court. Again, my name is Brad Jarka with the Office of the State Appellate Defender, and I represent the defendant appellant in this case, Mr. Johnny Gillon. I do plan to address all three issues presented in the briefs in the order they're presented in the briefs. Of course, I'm happy to take any questions about any of the issues at any time. And with the Court's permission, I will be using just a few minutes in rebuttal. There are three unique errors in the proceedings below, and they all stem from the same source. The trial court's failure to inquire further, where the facts before it begged further inquiry. And that failure to inquire started at the restoration hearing, which took place on June 30th of 2014. But Mr. Gillon's fitness determinations had actually started taking place sometime before that. On April 21st of 2014, Mr. Gillon was evaluated by Dr. Lowe, pursuant to defense counsel's motion requesting the Court to find a bona fide doubt as to his fitness. And Dr. Lowe found several things based on his evaluation of Mr. Gillon. First, that he had been diagnosed with paranoid schizophrenia. Second, that he had a history of polysubstance abuse. Third, that he had prescriptions for psychotropic medication. And those diagnoses led Dr. Lowe to conclude that Mr. Gillon's behavior would be so disruptive that he would be unable to work with counsel and assist in his own defense. On May 5th, the trial court held a hearing and, pursuant to Dr. Lowe's report, found Mr. Gillon unfit to proceed. And at that time, both the Court and the parties were in a posture to presume that Mr. Gillon was unfit unless and until a valid restoration hearing took place. The Court's May 5th order also requested a separate evaluation from the Department of Human Services, which Dr. Schweiger completed on May 16th of 2014. And as part of that evaluation, she concurred with Dr. Lowe on much of what was in Dr. Lowe's report. She agreed that Mr. Gillon had a diagnosis for paranoid schizophrenia. She agreed that Mr. Gillon suffered from polysubstance abuse. And she agreed that Mr. Gillon had been prescribed both Haldol and Cajentin since as early as March 1st of that same year. And the disagreement of the reports is critical to the Court's error in this case. What the reports fundamentally disagreed on is whether or not the psychiatric diagnoses that both Dr. Lowe and Dr. Schweiger made would impact Mr. Gillon's behavior in a way that prevented him from working with counsel and assisting in his own defense. The timing of the reports is also critical in this case because Mr. Gillon was evaluated and found unfit by Dr. Lowe in April of 2014, April 21st, I believe. And he was re-evaluated only three weeks later on May 16th by Dr. Schweiger. That report by Dr. Schweiger was eventually filed on June 13th and considered by the Court on June 30th. But she actually conducted her evaluation only three weeks after Dr. Lowe had found Mr. Gillon unfit. And so what the trial court had before it, because these reports, barring continuances for the Court to enter its orders and such things, were essentially contemporaneous reports. And so what the trial court was essentially tasked with... Well, three weeks later is three weeks later. Yes, of course. But when we're talking about global fitness, the three-week time period, it potentially is too short for any reason or any meaningful change to occur in circumstances. And part of the delay was, in fact, the trial court entering its order, Dr. Schweiger obviously receiving and responding to that order, and eventually conducting the evaluation. So for all intents and purposes, what we're looking at in terms of fitness is reports that are so close in time as to be contemporaneous. Now, isn't that something that we can't speculate about? That is, it seems close in time, but I remember as a trial judge back in the Middle Ages committing people to as unfit, and the Department of Mental Health would, and these people were really in terrible shape. And my recollection is, in relatively short time, I had a guy come back into my courtroom with a report of being fit. I didn't even recognize him as being the same guy. And maybe it wasn't three weeks, but might be six. And I don't know if it was due to some medication or what they gave him, but I was astonished that he was better. I suppose this is a long way of saying, can we conclude that three weeks is, as you're suggesting to us, an unreasonably short period of time for there to have been, in fact, a dramatic change or recovery from this guy who was unfit. Everyone seemed to think three weeks earlier now is no longer unfit, perhaps, and I'm assuming this would be the case, because of medication. Sure. And I wouldn't ask this court to make some sort of per se rule that three weeks is too short of a time for a defendant to perhaps recover. But what the three-week time period informs is the dispute between the two evaluators. And the dispute was what impact the diagnoses would have on Mr. Gillen's behavior. And given the short turnaround time and that fundamental dispute between the two reports by the experts, it was inherently within the province of the trial court to look at Mr. Gillen and to ask counsel and to work with counsel and Mr. Gillen to determine whether or not, in fact, Dr. Lowe's report still governed, whether or not the diagnoses did, in fact, still impact his behavior, or whether or not the DHS report, in fact, governed. And Mr. Gillen and his counsel were able to work together to prepare an effective defense. Hold on. Did you refer to two doctors? Yes. Well, who's the second doctor? Dr. Schweigert is the second doctor. She works with the Department of Justice. I thought she's a licensed clinical social worker. That may be the case. My mistake. I don't think that changes the analysis in this case. It probably helps. It may, in fact, if she were not able to render an opinion that was as scientifically persuasive or medically persuasive as Dr. Lowe. But really what the issue boils down to is what the trial court did with the reports, not necessarily what evidentiary value the reports themselves had. So we talk about the ultimate disagreement between the reports. And then it was the trial court's duty to marshal that disagreement and come to a determination after carefully considering those reports on the record to determine whether or not it was, in fact, Dr. Lowe's conclusion or Dr. Schweigert's conclusion that governed the analysis at that point. Let me ask you this question. And leaving aside for the moment the point does this connect me, which I think is very sound. Who is Kimberly Schwenke? And is this a report which is the equivalent of a psychiatrist report? Leaving that aside for the moment, let's assume that she's a competent witness and a competent evaluator. Let me ask you this. Had the parties stipulated at this new hearing that Kimberly Schwenke, LCSW, would justify as indicated in her report regarding the defendant's witness to stand trial, and the trial court then asked both the prosecutor and the defense if either had counsel, that is, if either had any additional evidence to present on the issue of defendant's witness to stand trial, and each counsel indicated counsel did not. And the court said, based upon the evidence before me, I'm finding defendant fit. Would that comply with People v. Lewis? No on the facts of this case. And I think the dispute, again, between what the reports actually found and the fact that the relevant dispute was the impact of Mr. Gillen's Well, so this would be different from a routine fitness case in that regard? I think so, yes, because we're not talking about the trial court's need to rely on medical opinion testimony about Mr. Gillen's mental state, his ability to understand or comprehend. Both Dr. Lowe and Ms. Schweiger agreed on that point. What they disagreed on was how those diagnoses were impacting Mr. Gillen's behavior, and the parties that were most responsible for marshaling that behavior throughout the remainder of the proceedings would have been the trial court, defense counsel, and Mr. Gillen himself. And so what this case presents is not only an opportunity but a necessity for further inquiry by the trial court as to whether or not Ms. Schweiger's evaluation was accurate in saying that Mr. Gillen could now work with counsel. Well, let me handle it this way, then. Your defense attorney, and Mr. Zimmerman is the prosecutor, I'm the trial judge, and I get this evaluation that says he's now fit to stand trial. In effect, it says it, right? I turn to Mr. Zimmerman and I say, and there's a stipulation that this witness, if called, would testify to what's in the report. I turn to Mr. Zimmerman and I say, do you have any other evidence you'd want to present? He says no, and I say to you, Mr. Jarkin, do you have any other evidence you'd want to present? What are you going to say? You really don't have any other, do you? Unless I were willing to say that Mr. Gillen would or would not work with me, but the onus at this point in the proceedings was on the Well, the first thing as trial judge I'm asking is, what's your position defense counsel? What are you going to tell me? I would only be able to opine as to whether or not Mr. Gillen had, in fact, been able to cooperate with me and assist in preparation of defense. Well, assume that you have no representation to make that he was not at this point. Maybe he's back from DMH and you've talked to him and his meds have kicked in. And you say to the judge, no, I stipulate to this report I have nothing further to add. What's the court supposed to say? Well, I think that would be appropriate, and I think that was the case of what happened similar in, excuse me, just one moment. I believe People v. Thompson is a similar case. The court ultimately found that the restoration hearing was inadequate, but under People v. Shaw and People v. Lewis itself, I think if counsel were to make that representation on the record, then this case would be in a completely different posture, and there may not even be this issue before the court right now. But what we had is the trial court essentially rubber-stamping Ms. Schweigert's report and her conclusion that Mr. Gillen had been restored to fitness without engaging in any sort of inquiry with defense counsel, with Mr. Gillen, as to whether or not his behavior had in fact changed, or whether or not Mr. Gillen was in fact still receiving or taking his medication while he was in the Champaign County Jail. And so we're in a world where we can't just accept. Well, you mentioned Shaw. I'm sure you're very familiar with the recent decision of this court, and I suspect you saw my special concurrence, in which I referred to the magical incantations. And I'm still trying to figure out, it seems to me, we're the appellate court now, but you're looking at a panel that has maybe 40 years trial court experience, possibly more. So we've been there. If I'm the trial judge, am I supposed to start a dialogue personally with the defendant at this hearing on seeing if he's now fit when we have the stipulation concerning the expert that he is? On the facts of this case, my answer is yes. I don't think that's required. Okay. By the way, I appreciate your candor and your direction. What questions would you have me ask of the defendant personally that would be appropriate? What would you have me ask? Sure. Based on Dr. Lowe and Ms. Schweigert's report, I think relevant questions in this case would have been, Mr. Gillen, are you on your medication? Are you receiving your medication while you're still incarcerated? Mr. Gillen, have you been able to work with counsel? Have you spoken with counsel? Let me pause right there. I've read a lot of these cases. I don't recall any where the trial judge did any of this or where a court of review said the trial court ought to do it. And as a matter of fact, as a former trial judge, I would view this with some trepidation. It's always problematic under the best of circumstances when the court on the record is engaging in some sort of questioning or dialogue with the defendant personally. Is there some case law that says, oh, yeah, this is what you should do, engage in this dialogue? I don't have a specific case that requires that or even forcefully suggests it. Do you recall one where it actually happened? I literally don't remember this. No, I think most of the colloquies that are engaged in between the court and a member, another person in the courtroom, were between the court and counsel. Well, I can see that. I've done that. I can see if I'm the trial judge saying, well, Mr. Jarka, you have in the past, and the reason I ordered the fitness examination, expressed concern that the defendant was not able to cooperate with you or understand the nature of the proceedings, the criterion. And do you still have those concerns? Would that be the inquiry to be made? I think yes. I think that is certainly part of the inquiry that can be made. And this goes further to the real errors. The real error in this case is not necessarily what evidentiary value we assign to Ms. Schweigert's report, what evidentiary value we assign to defense counsel's silence on the record. What the trial court ultimately found when it found Mr. Gillen restored to fitness, when the trial court made its finding, it said it is the determination of the professionals that Mr. Gillen is now fit to proceed, and so I find. And in that way, created an equivalence between what Ms. Schweigert had determined and what it was determining for itself. Well, that's what Lewis seems to be saying, but what I don't understand why I think Lewis is mistaken in this regard, is the Supreme Court never exactly explains in Lewis, or subsequently, what else is supposed to be presented. That is, short of asking defense counsel, which I suppose could be done, but I don't recall that as being a requirement, and indeed, it's implicit. That is, if you're stipulating to the report, as happened in this case, and you still think that the defendant is incapable of cooperating with you on deciding the nature of the proceedings, I would expect, and indeed, I've had the experience as a trial judge, where the defense counsel would say, no, judge, we still have the same problems, but that's not what happened in this case. So, you know, when the Supreme Court essentially, you know, picked up on their theme, says, oh, no, you can't just agree to what the experts say. You're supposed to do something else. The something else is never clear, and as a matter of fact, it's typically there is nothing else. It's not as if there's some other expert that has examined this guy. It's not as if there's some other evidence that is going to be forthcoming. So when they say, well, you just can't accept the defendants or the report, the prosecutor's got no further evidence. The defense attorney offered no further evidence. So the judge should say, do you have any further evidence to present? And if you don't, then I'm going to accept that that would be okay? I think that would be better. I think what we're really looking for is something on the record to indicate that what the trial court did was engage with the reports that were presented before it and engage with defense counsel in a case in which the reports indicate that the real problem is psychiatric diagnoses leading to an inability to behave appropriately. So I think there's a lot more deference to be given to an expert opinion when the court talks about whether or not a defendant is understanding what his intellectual capabilities are. Let's assume that's what this report said. It still would be reversible error for the court to just accept the stipulation, wouldn't it? Under Shaw, I don't think that's right. I think if the court would be perfectly within its purview to accept an evidentiary stipulation when, as in Shaw, what the reports were actually saying was, and they agreed that the defendant was fit, and what those two reports actually said when they were discussing, on my recollection of the facts, is that the defendant had certain comprehension issues, had an inability to understand and appreciate what was going on, and had an ability and had, there were concerns with whether or not he could understand, and the report ultimately found that he would be able to understand. And so when we're talking about an expert conclusion as something that is eminently within a medical expert's milieu, we're talking about a lot more deference that can be given to the trial court's acceptance of nothing more than an evidentiary stipulation. In this case, of course, that's not what we have. We have a disagreement about whether or not Mr. Gillen can behave appropriately. We have a stipulation that takes the improper form, even under People v. Shaw. And then we have the trial court directly linking its fitness determination to the determination of Ms. Schweiger and not engaging the record in any sort of affirmative exercise of its discretion when it was imperative that the trial court be the one that make the ultimate fitness determination. And just briefly to address Issue 2, throughout the proceedings Mr. Gillen presented behavior and testimony that should have called into mind the prior finding of unfitness and the prior disagreement between those two psychiatric reports, and should have raised a bona fide doubt in the mind of the trial court precipitating a revisitation of Mr. Gillen's fitness. And specifically, going to the hearing on the petition to revoke probation, as Elizabeth Porter began to testify, Mr. Gillen interrupted to declare that she was lying, and then the trial court had to interrupt her testimony further to remind Mr. Gillen not to interrupt. Later, Mr. Gillen testified, and on direct examination, he testified without any other corroborating basis that Jack Kane, who was another employee at the Little Caesars in Urbana, was out to get him, wanted to harm him, that Elizabeth Porter had some sort of blade on her and was going to work with Jack Kane to harm him. And then it really went from a road of sort of tangentially related to a self-defense claim as to the assault charge, to completely delusional and paranoid on cross-examination. And I see my time was up. Finish that thought. Sure. And so what we have is Mr. Gillen behaving and testifying in ways that call his fitness into doubt once again, and the trial court failed to exercise its discretion to find a bona fide doubt. Thank you. We'll hear from the Honorable. Thank you. May it please the Court, Counsel. Good morning, Your Honors. My name is John Zimmerman. I'm from the Fourth District, fellow prosecutors here on behalf of the State. Regarding the first issue of defendant's restoration of fitness, as Your Honor and Counsel discussed in depth, the State's position is that the statement that it did consider in two different times of the record shows that there was those magical incantations. And although you disagree that those are necessary, and the State also agrees with you, we find that the magical words were said here, that being that the trial court. Well, did the trial court ever say, you know, as I mentioned Shaw asked the parties if they had any other evidence they wanted to present? In this case, Your Honor? Yes. Yes. The court said after asking them if they both had the report, it said they both stipulated to the report. And the court said, all right, we'll show that the court has considered that report. It was authored on May 22nd, 2014 from DHS. Did the State wish further evidence than Mr. State's attorney? And at that time, both parties waived evidence and argument. And then the court stated again, I have considered that report. It is the determination of the professionals working with, and then the rest of what Counsel stated. And so, yes, he did say, so I do find that he's able to assist, but that considered is the magical word that is said here that shows, as I stated in my brief, the definition of consider is, you know, to analyze, to think about, I believe, it's affirmative act of judicial discretion that the trial court exercised here. And while the State does agree with your point on magical incantation words and how they are unnecessary, I think this case has those. So you don't have to make a difficult decision. Who is this person, Kimberly Schwenka, a licensed clinical social worker? Does the record identify her as being a psychiatrist or a psychologist? And does she have the necessary expertise to address a matter such as the seriousness of a defendant's fitness to stand trial? If it is not a doctor, the State's position would be that she would not. I do not know that off the top of my head, and the case has been a couple of months. Well, the reports submitted by an evaluator with LCSW, after name, licensed clinical social worker, that would indicate she doesn't have either an MD as a psychiatrist or a PhD as a psychologist. So I'm curious about who is this person? I do not have that answer, Your Honor. I apologize. So additionally, I don't know if this was discussed previously, this issue was forfeited by a defendant in the State's position is that plain error does not apply because no error occurred. And even comparing this case to Shaw, when looking at Shaw, the discussion in the trial court regarding the fitness was, again, similar to this. Do you have the report? Yes. Do you stipulate? And they did stipulate that he would testify as set out in his report dated October 9th. And then the trial court held, we will show, based upon the evidence presented, the court finds the defendant is now fit to plead and or stand trial. And Your Honors found that sufficient. Whereas here we have that additional magical word that I have considered. I believe that goes a step beyond what is required by Shaw. When looking at the second issue, which is whether the trial court erred when it did not reopen the issue of defendant's fitness, the State's position is that it did not. A review of the record shows that defendant was able to understand the nature and purpose of the proceedings. Yes, he did interrupt various times. But when he interrupted, he showed that he did understand what was going on. He said the witness was lying. That shows he was comprehending what she was saying and that it was in conflict with his testimony. When he was told not to interrupt, he complied until it was his time to testify. Yes, he testified. He was clearly able to assist in his own defense. These are the requirements to rebut the presumption of fitness, and defendant did not overcome these requirements. And then when looking at what would raise a bona fide doubt of his fitness, his demeanor, yes, he was quite lively throughout the proceedings, but some defendants are that way. It doesn't mean that he's not fit for trial. Another important aspect of this, although not dispositive, was defense counsel's representations of defendant's fitness. As your honors are aware, it was the defense counsel's initial concerns with his fitness, which is what caused the trial court to order a fitness evaluation. Defendant was then found unfit. Then he was restored to fitness. And then throughout the proceedings, defense counsel never made any more remarks or concerns about defendant's fitness. I believe this is an important aspect, showing that he believed defendant was fit, even if he was a little rambunctious. Then looking at prior medical opinion, again, he did have some issues, but many defendants have many issues. That doesn't mean that he's not fit for trial. So the state's position is that the trial court did not err when it did not find a bona fide doubt that defendant's fitness was present. Third, regarding the Crankle inquiry, the state's position is that there was not a claim that was properly brought before the court. If your honors look at the transcript, it's on page 32 of the state's brief. At the sentencing hearing, the defendant had various times to make statements regarding any issues he had. The trial court stated, before I impose sentence, defendant has the right to make a statement to the court. He's not required to. Was there anything he wanted to say? Defendant made some statements about how he was previously off his medicine. He had trouble remembering what was occurring. He apologized. Long, winded, rambling statements. Then the trial court continued with sentencing, and defendant continues to interrupt. And then at one of these interruptions, he states, one more thing, I wasn't involved with no plea bargains or nothing. I was thinking like, I was wondering why come defense counsel's name only called me one time out of nine months before, and didn't get no plea bargains, and I didn't get no, I would call it, I'm trying to think of what you call it, innocent of counsel. And possibly upon having the review of the record in front of you, you could see maybe there was some sort of assistance claim there. But when you're in the trial court's position where the defendant is interrupting multiple times throughout trial, making ambiguous statements, just rambling, it's obviously amenable to more than one interpretation. And when you look at the reply brief from counsel, he states that the defendant's remarks, which I just quoted, were specific and unambiguous. Yet in his initial brief, he states that the remarks were amenable to more than one interpretation. And so the defendant cannot have it both ways in one issue and another when it's about the exact same statement that he's discussing. So the state's position would be that it was a completely ambiguous statement that did not complete the requirement of bringing an effective assistance claim to the trial court's attention, and so there was no clinical inquiry that was needed. If there's no further questions, the state rests. Thank you. Thank you, Your Honor. Just a few points on rebuttals, Your Honor, and I'll try and be as brief as I can. In response to the state's assertion and assurance that the trial court, quote, considered the report at issue for the restoration hearing, I think that shows how the concern for the recitation of magic words is really a double-edged sword, because we don't want to devalue the due process clause by simply requiring courts to say words that ultimately mean nothing. But at the same time, we don't want to insulate errors from review by simply allowing the trial court to say that it, quote, considered something, and we don't know what aspect of that report it considered or the depth of its consideration. As to issue two, the state assures us that Mr. Gillen's interruptions show that he was able to understand what was going on, but if we look back to the reports from Dr. Lowe and Ms. Schweiger, Mr. Gillen's understanding was never at issue. The real issue as to Mr. Gillen's fitness was and always had been whether or not the psychiatric diagnoses affected his behavior, and his interruptions throughout the proceedings and his testimony at the hearing indicate that he was behaving in such a way that would not assist in his own defense. I want to go back to a question I asked earlier, and I need some clarification on it because I'm just not sure I understand what your position is. The hearing concerning the defendant's fitness after he came back from DHS had the court call for a fitness hearing and asked about this report, and both counsels said, yeah, we have this report, and we'll stipulate that as to the report from the department, essentially meaning they'll stipulate that if this person who wrote the report testified, this is what you would testify to. And that's what the prosecutor proposed. The defense counsel agreed to it. The trial court then says, okay, show that the court has considered the report. Turns to the prosecutor and says, do you have any further evidence? No. And then turns to the defense attorney and says, do you have any further evidence? No. Then turns to the prosecutor and says, do you have any argument you wish to make? The prosecutor says no. And then turns to the defense attorney and says, do you have any argument you wish to make? The defense counsel says no. Then, of course, as I've considered the report and its determination there that it's fit to stand trial, so I'm accepting that essentially and so conclude it. What didn't the court do that it should have done to pass Musner under Lewis? Under Lewis, I think what the court needed to do was engage in some sort of on-the-record indication of what about the report it found convincing because the error ultimately is not evidentiary. Although, with respect, I do have to disagree with Your Honor's premise that stipulation was sufficient in this case. But the issue is really not evidentiary. Well, I'm not sure I understand. We have this report from the expert saying he's not fit to stand trial. No one disputes it. So the court is supposed to say what about that report? The court, I think, on the record can say this report was authored by so-and-so, which was done, and then engage with the findings of the report. The report finds Mr. Gillen restored to fitness on this basis, based on my observations and the representations of counsel. I find that report to be persuasive. Therefore, I enter a finding that Mr. Gillen is, in fact, fit. And what the court did instead in this case was simply equivocate its finding of fitness to the, quote, determinations of the professionals. Well, isn't there, given that there's no other evidence before the court, isn't implicit in that the court's accepting the findings? I don't think due process allows us to accept that sort of implicit finding. So if the court had said I find this report well done and persuasive and I'm going to accept it, that would be enough? Yes, I think so, because then on appellate review, we have some sort of assurance that what the court wasn't doing was just muttering magic words. Well, in fact, the court said his determination of professionals working with the defendant is now fit to stand trial, and I find he's able to assist in his own defense. So what's missing is a clause saying I agree or I respect the assessment by the DHS people? Yes, and I think that's in line with traditional credibility findings that any trial court would make when we're talking about its consideration of any sort of evidence. Well, we've had plenty of FBI reports that's, you know, here's the FBI stipulation and fingerprints. You mean the court's got to say I've read this FBI report and I'm accepting what it says? You know, as opposed to, yeah, the parties have stipulated to the admissibility of this testimony or the DNA testimony. I'm not fencing with you here. I'm trying to figure out what the standard is because regarding stipulations generally, I don't recall ever making such a statement, and I'm surprised that we're now saying the trial court has to do that. Well, I think it helps to look at what the content of the stipulation in this case was. The stipulation in this case was we stipulate, the state would stipulate to the report, and there's no mention of testimony or any other. The state didn't even go so far as to say we would stipulate to the contents of the report. So what's being incorporated by the stipulation is inherently ambiguous. Is the state stipulating to the report's conclusions? Is the state stipulating to all of the findings in the report? What is the state actually stipulating to? To the admissibility of this document, the report which contains its findings and conclusions. That's what the defense attorney agreed to. I think that's fair as to what the stipulation is, but I would have to disagree as to what that stipulation in fact accomplishes when there's no assurance on the record that the stipulation was to anything but really then the existence of the report. So I want to be clear on this. You're not saying the trial court had to do anything else at this point as far as engage in a dialogue or something, but it has to say something more about what the report means to the court and how it's going to accept that to pass muster with Lewis? I think yes. And I think while there's no additional dialogue perhaps required with defense counsel, and as we discussed previously, there's no dialogue required between the court and the defendant, I think some dialogue between the court and the defendant may have been helpful in this case given the facts in the reports in particular. And seeing that my time is up, I would simply ask the court to vacate and remit for new fitness proceedings. Thank you, counsel. We'll take the matter under invite and recess.